## PEOPLE v BOST

Docket No. 48625. Submitted May 6, 1981, at Detroit.—Decided June 30, 1981.

Sylvester Bost was convicted at a bench trial in Wayne Circuit Court of criminal sexual conduct in the third degree and was sentenced, James A. Hathaway, J. Defendant appeals his conviction, contending that the trial court erred by admitting evidence of a prior similar act. *Held:*

Defendant's defense was that the alleged crime never occurred, therefore, testimony as to whether he had perpetrated a previous, unreported rape was neither material nor relevant to the charged offense. Evidence of prior similar acts must be both material and relevant in order to be admissible. The testimony regarding the prior similar act merely tended to show that defendant had sexually misbehaved in the past. The admission of that evidence was error and, because the trial court's opinion indicates that the court relied on the evidence of the prior similar act, the error cannot be said to have been harmless.

Reversed and remanded for a new trial.

1. Criminal Law — Evidence — Other Offenses — Sexual Offenses — Statutes.

The general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged because whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence; however, the probative value of such evidence may outweigh the disadvantages where the people seek to use such evidence to show the defendant's "motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in the act in question" (MCL 768.27; MSA 28.1050).

References for Points in Headnotes
[1, 2, 4] 29 Am Jur 2d, Evidence § 320.
[3] 61A Am Jur 2d, Pleading § 364.

2. CRIMINAL LAW — EVIDENCE — OTHER OFFENSES.

A threshold requirement for the admission of similar acts evidence is that the evidence be material; for the evidence to be material, a purpose which is provided for in the similar acts statute must be in issue (MCL 768.27; MSA 28.1050).

3. CRIMINAL LAW — EVIDENCE.

A mere general denial by a defendant is insufficient to place into issue for purposes of materiality the matter which the denial pertains to.

4. CRIMINAL LAW — EVIDENCE — OTHER OFFENSES — STATUTES.

Four propositions must be established before similar acts evidence is admissible: (1) the criminal act in question must have distinguishing, peculiar or special characteristics; (2) the similar act must also bear these characteristics; (3) the similar act must have been performed by the defendant; and (4) the crime in question must have been committed by the defendant (MCL 768.27; MSA 28.1050).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Young & Kaluzny,* for defendant on appeal.

Before: BASHARA, P.J., and N. J. KAUFMAN and J. L. BANKS,* JJ.

PER CURIAM. Defendant was charged with criminal sexual conduct in the third degree, MCL 750.520d; MSA 28.788(4). Prior to trial, the trial court heard arguments on the prosecution's request to admit evidence of a prior similar act. The court heard the testimony of one Ms. Beard concerning the alleged prior similar act of rape by defendant and granted the motion. Defendant waived his right to a jury trial. Defendant was found guilty as charged and was sentenced to 1 to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

15 years, the time to be served in a halfway house. Defendant's motion for a new trial was denied.

The sole issue on appeal is whether the testimony concerning the prior similar act was properly admitted.

The general rule in Michigan is that evidence of a defendant's other bad acts is not admissible because the prejudicial effect outweighs the probative value. *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). An exception to this rule is provided by statute:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." MCL 768.27; MSA 28.1050.

See also MRE 404(b).

The prosecutor claims the evidence of a similar act was properly admissible to show common plan or scheme. However, as a threshold requirement, it must first be shown that such a plan or scheme is material. *People v Major,* 407 Mich 394, 399; 285 NW2d 660 (1979). To be material, a purpose provided for in the statute, in this case common plan, must be in issue. A mere general denial by the defendant is insufficient to place the matter in issue. *People v Arenda,* 97 Mich App 678, 682; 296 NW2d 143 (1980). Here, defendant has not claimed

mistake or accident or that the act was unintended, which would have brought the matter of common plan into issue. Defendant simply claims that the alleged rape did not occur. Therefore, this Court fails to see how alleged prior sexual misbehavior is material to whether the charged rape occurred. To allow this testimony would be only for the purpose of proving that if defendant did it before he must have done it this time.

Besides materiality, the Court in *Major* set out a second level for admissibility of similar acts:

"The evidential process by which similar acts evidence is properly introduced involves direct proof of three propositions from which a fourth is inferable and thus proved circumstantially. They are:

"1) that the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics;

"2) that certain specific similar acts, performed contemporaneously with or prior to or subsequently to the act in question, bore the same distinguishing, peculiar or special characteristics;

"3) that the similar acts were performed by the defendant; and

"4) that, accordingly, the crime in question was committed by the defendant.

"It is the distinguishing characteristics which constitute the acts as similar within the meaning of MCL 768.27 and MRE 404(b), not the fact that all constitute the same crime or are violative of the same statute. The distinguishing, peculiar or special characteristics which are common to the acts and thus personalize them are said to be the defendant's 'signature' which identifies him as the perpetrator, or, if his identity is not contested, negates the suggestion that his behavior in performing the challenged act was unintended, accidental, a mistake, or otherwise innocent." *Id.,* 398-399. (Footnotes omitted.)

Addressing factor one, it must be determined whether the characteristics of the criminal acts are so distinguishing, peculiar or special as to become defendant's signature. In *People v Bolden,* 98 Mich App 452; 296 NW2d 613 (1980), *lv den* 410 Mich 855 (1980), this Court addressed the question of similar acts, as that issue was likely to resurface at defendant's new trial. This Court held that the following testimony bore the same special characteristics necessary to identify defendant as the perpetrator:

"A comparison of the similar acts evidence proffered here and the evidence of the complainant, Ms. Watson, reveals striking similarity. Both victims were older women who were assaulted in their own homes in the afternoon. In each case the assailant entered the home while the victim was outside. In each case, the assailant put his hand over the woman's mouth and threatened to kill her if she did not cooperate. Both women were taken forcibly into the bedroom, raped, and tied in the identical manner to the bedpost. The assailant searched both homes for money and jewelry." *Id.,* 459.

In another criminal sexual conduct case, *People v Baker,* 103 Mich App 704; 304 NW2d 262 (1981), the similar acts evidence qualified for admission as being probative of identity which was material because of an alibi defense. This Court found the acts sufficiently similar based on the following testimony:

"Three witnesses testified. The first was a maid at the Holiday Inn in Ann Arbor. She testified that while alone in the hotel cleaning a room, defendant entered the room, grabbed her around the neck, threatened her, and then made her have sexual intercourse with him. Afterwards, defendant fled. The second witness was a guest at the Ann Arbor Campus Inn. She testified that while alone in the hotel, in the women's sauna, defen-

dant entered the room with a knife, threatened her, and then made her have sexual intercourse with him. Afterwards, defendant fled. The third witness was a maid at the Troy Hilton Inn. She testified that while alone in the hotel cleaning a room, defendant entered the room, grabbed her around the neck, threatened her, and attempted to have sexual intercourse with her. The witness's struggling prevented defendant from achieving penile penetration. Afterward, defendant fled." *Id.,* 710.

In the instant case, defendant claims that he did not rape the complainant. Earlier on the day of the alleged rape, the complainant had come to the office of defendant, who was the Director of Human Relations for the City of Highland Park. According to the complainant, Ms. Brown, defendant called her at home later in the day and asked to come by and do some paperwork. He arrived about 6 p.m. and spent about three hours asking her questions and writing down answers. She then stated that defendant began drinking heavily but that she did not drink. When she resisted his attempt to kiss her, defendant hit her with his fist and she fell to the floor. Defendant then went downstairs to answer the door for a man delivering a pizza. During defendant's absence, Ms. Brown took a variety of pills, including Valium. When defendant returned and saw the pill bottles, he hit Ms. Brown again and she fell to the floor. He then ripped her pants off and proceeded to force sexual intercourse upon her.

The testimony of Marcia Beard was admitted as similar acts to show a common scheme. Ms. Beard and defendant worked together and initially had been competing for the position of Director of Human Relations, which was ultimately awarded to defendant. On the night of the alleged incident in May of 1976, defendant was expected at Ms.

Beard's house at about 6 p.m. to pick her up to drive to Lansing. The trip was prearranged, combining business and pleasure. Defendant eventually arrived at Ms. Beard's home at about 11 p.m.; he had been drinking. He fell asleep in a chair and Ms. Beard was unable to arouse him. She then went upstairs, took off her slacks and shoes and went to bed. Sometime later she was awakened when defendant entered her bedroom. When she attempted to get off the bed, he pushed her back on the bed, grabbed her by the hair and proceeded to force intercourse upon her. She never filed a complaint with the police but took her allegations to the Mayor. Defendant admitted that he did have sexual intercourse with Ms. Beard but contended that it had been at her initiation and with her consent.

The prosecutor claims that defendant's common scheme was to use his position as Director of the Human Relations Department to find women who were vulnerable. He would then go to their homes on the pretext of official business and then force them to have intercourse with him. The pivotal factor in his plan was to use his job to select a vulnerable target so that he bore very little risk of prosecution.

This Court fails to see a pattern of peculiar or special characteristics here. Ms. Beard could hardly be considered vulnerable. She was an educated woman and a coworker of defendant, with whom she had socialized on several occasions. The complainant was described by the trial court as "immature, unstable, a person perhaps filled with anxiety, problems, an individual who apparently desperately needed help". Although both alleged rapes took place in the victims' homes after defendant allegedly had been drinking, there do not appear to be any really peculiar aspects to the way

defendant allegedly committed the act, as there were in *Bolden* and *Baker.*

The trial court's reliance on *Oliphant* was misplaced. In *Oliphant,* the defense was consent. The testimony of three previous similar acts was material to show a common scheme to make it appear that the victim consented. The Court stated:

"Certainly, the fact that an individual commits a rape at one time has no bearing on whether another woman consented to intercourse at a later time. * * * Here, however, the people did not offer the prior acts to prove prior rapes, or that the defendant is a bad man with criminal propensities. The people offered the prior acts to show the scheme, plan or system employed by the defendant in raping the complainant *in a manner and under circumstances* which gave the appearance of consent should he meet with resistance." *Oliphant, supra,* 491. (Citation omitted.) (Emphasis in original.)

In the instant case, the evidence of prior similar acts was not admitted to prove defendant's identity or to negate the suggestion that his behavior in performing the challenged act was unintended, accidental, a mistake, or otherwise innocent. This Court concludes that, as in *Major,* this evidence "simply tends to show that the defendant had misbehaved sexually in the past. Since the evidence failed to pass muster both as to relevancy and materiality, it was admitted in error". *Major,* 400-401.

The prosecutor contends that any possible undue prejudice to defendant was fully neutralized by the fact that this was a bench trial. *Major* was also a bench trial but the Court did not find the error in that case harmless. There, as here, the case essentially turned on credibility. The trial court's opinion in the case at bar indicates that it did rely on

Ms. Beard's testimony. Therefore, this Court cannot conclude that the error of allowing the testimony on prior similar acts was harmless.

In summary, the proffered evidence of prior similar acts has failed to surmount both of the hurdles for admissibility set forth in *Major*. First, similar acts to prove a common scheme are not material to the issues raised. Defendant has not claimed mistake, accident, consent or any such defense which evidence of a common scheme would tend to negate. Defendant merely claims that the alleged rape did not occur. Therefore, prior sexual misbehavior is not material to the issue involved. Secondly, even if evidence of a common scheme was material, there was nothing in Ms. Beard's testimony of the alleged rape by defendant that establishes peculiar or distinctive characteristics that rise to the level of being "defendant's signature". Therefore, the evidence would not pass the relevancy test in *Major*.

Reversed and remanded for a new trial where the testimony of prior similar acts is not to be admitted.